# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2025-KA-00022-SCT

*MICHAEL ANTHONY MOODY a/k/a MICHAEL MOODY*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/19/2024 |
| TRIAL JUDGE: | HON. ROBERT B. HELFRICH |
| TRIAL COURT ATTORNEYS: | KIMBERLY WOODALL MORRISON |
| | BRYAN P. BUCKLEY |
| | JOHN ANTHONY PIAZZA |
| COURT FROM WHICH APPEALED: | PERRY COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: AMBER LAUREN STEWART |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DANIELLE LOVE BURKS |
| DISTRICT ATTORNEY: | LIN CARTER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 11/06/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE KING, P.J., MAXWELL AND CHAMBERLIN, JJ.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1. A jury convicted Michael Moody for possessing methamphetamine. The drug seizure stemmed from Moody's late-night phone call to police, claiming he was being chased. Arriving officers found him pounding on someone's front door. Moody appeared erratic. And a sheriff's deputy suspected he was high on drugs. Moody gave permission to search what he later described as "his" vehicle. Inside, a deputy found a sunglasses case containing

a glass pipe and methamphetamine. On appeal, Moody argues insufficient evidence supports the jury's finding he constructively possessed the methamphetamine.

¶2. But officers found the methamphetamine inside Moody's car. And while in the backseat of the patrol car on his way to jail, Moody remarked that he "should have gotten rid of that shit" before calling the cops. From this, a rational juror could certainly find Moody knowingly possessed the methamphetamine. Thus, the evidence was sufficient, and we affirm.

**Facts**

¶3. On October 24, 2021, around 10:41 p.m., Perry County Sheriff's Deputy Darryl Dye responded to a call from outside a residence in Beaumont, Mississippi. The caller—Moody—had first called while on Highway 98 and had placed a second call when he reached the residence. Fearing someone was chasing him, Moody beat on the door to wake the homeowner. Law enforcement found no evidence Moody was being chased.

¶4. When Deputy Dye arrived on the scene, a Beaumont police officer had already escorted Moody away from the door. Moody kept repeating to himself that he was "trying to do the right thing." And Deputy Dye noticed Moody was acting erratically, possibly on drugs. When Moody did not respond to initial questions, Deputy Dye asked if Moody was under the influence of alcohol or controlled substances. Moody said he had been drinking. He also gave Deputy Dye permission to search his car.

¶5. Inside the vehicle, Deputy Dye saw a black sunglasses case on the driver-side

2

dashboard. He opened the case and found a glass pipe with brown residue and a plastic bag containing a crystal substance. A field test revealed the substance was methamphetamine. After the test, Deputy Dye read Moody his *Miranda*[1] rights and placed Moody in custody.

¶6.     As the deputy led Moody to his patrol vehicle, Moody asked the homeowner if he could leave "his" vehicle there. And en route to the Perry County jail, Moody commented without prompt, "I should have gotten rid of that shit before I called y'all."

¶7.     Crime lab testing later confirmed the substance was 0.497 grams of methamphetamine. A grand jury indicted Moody for possession of more than one-tenth gram but less than two grams of methamphetamine, a Schedule II controlled substance.

¶8.     After a short trial, the jury returned a guilty verdict for possession of methamphetamine. The court sentenced Moody to three years in the Mississippi Department of Corrections' custody. Moody timely appealed.

## Discussion

¶9.     Moody raises two issues on appeal—the evidence was insufficient to support his possession-of-methamphetamine conviction, and the verdict was against the weight of the evidence. From the State's evidence, a reasonable juror could conclude Moody had dominion and control of "his" vehicle. And he also had dominion and control of the methamphetamine—that he verbally kicked himself for not moving—found inside his car. So sufficient evidence supported his conviction, and the verdict was not against the weight

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

of the evidence.

## I. Sufficiency of the Evidence

¶10.    "When testing the sufficiency of evidence, this Court views the evidence in the light most favorable to the State." *Williams v. State*, 305 So. 3d 1122, 1129 (Miss. 2020) (citing *Martin v. State*, 214 So. 3d 217, 222 (Miss. 2017)). "We determine if any rational juror could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (citing *Martin*, 214 So. 3d at 222). "The State receives the benefit of all favorable inferences reasonably drawn from the evidence." *Id.* (citing *Hughes v. State*, 983 So. 2d 270, 276 (Miss. 2008)).

¶11.    Moody argues insufficient evidence supports the jury's finding he possessed the methamphetamine. He correctly notes the State had to prove constructive possession because the deputy did not find the methamphetamine on his person.[2] And he argues the State did not sufficiently tie him to the vehicle. Alternatively, he suggests even if he did possess the vehicle, the sunglasses case concealed the identity of the methamphetamine.[3] But viewing the evidence in the light most favorable to the State, the evidence supports the jury's

---

[2] A conviction for possession of a controlled substance may be based on either actual or constructive possession. *Sills v. State*, 359 So. 3d 603, 610 (Miss. 2023) (quoting *Terry v. State*, 324 So. 3d 753, 755 (Miss. 2021)).

[3] Moody briefly argues that the lack of body-camera footage means this Court should reverse his conviction. But a lack of physical evidence "does not negate a conviction where there is testimonial evidence." *Body v. State*, 318 So. 3d 1104, 1110 (Miss. 2021) (internal quotation mark omitted) (quoting *Lenoir v. State*, 224 So. 3d 85, 94 (Miss. 2017)). So this argument lacks merit.

4

conclusion that Moody constructively possessed the drugs.

¶12.    Exerting control over the location where a controlled substance is found supports a constructive-possession finding when the defendant knew or should have known the substance was present. *Dixon v. State*, 953 So. 2d 1108, 1114 (Miss. 2007) (citing *Blissett v. State*, 754 So. 2d 1242, 1244 (Miss. 2000)). Likewise, "[c]onstructive possession may be shown by establishing the drug involved was subject to [the defendant's] dominion or control." *Terry*, 324 So. 3d at 755-56 (second alteration in original) (quoting *Haynes v. State*, 250 So. 3d 1241, 1244-45 (Miss. 2018)).

¶13.    Viewed in the light most favorable to the State, sufficient evidence showed Moody exercised dominion and control over the car. First, a rational juror could have found Moody recently drove the vehicle because he first called police *from the highway*. Second, Moody consented to Deputy Dye's search of the car. And third, when the deputy arrested him, Moody asked the homeowner if he could leave "his" car there. So the State proved Moody had control over what he described as "his" car.

¶14.    The State also presented sufficient evidence Moody knew or should have known about the methamphetamine. Moody himself commented he "should have gotten rid of that shit before [he] called [law enforcement]." And a reasonable juror could find Moody was referring to the methamphetamine in his car—methamphetamine that he controlled and should have ditched before officers arrived. This evidence supports the jury's finding he possessed the methamphetamine.

¶15. Still, Moody likens his case to *Ferrell v. State*, arguing even if he controlled the vehicle, the sunglasses case obscured the methamphetamine from his view. *Ferrell v. State*, 649 So. 2d 831 (Miss. 1995). According to Moody, he could not have constructively possessed something hidden from view. But Moody's reliance on *Ferrell* is misplaced.

¶16. In *Ferrell*, officers stopped the defendant for speeding and arrested him for driving with a suspended license. 649 So. 2d at 832. When Ferrell asked an officer to retrieve his car keys, the officer noticed a matchbox on the passenger seat. *Id.* The officer searched the matchbox to find only matches. *Id.* But he noticed a yellow pill under the matchbox. *Id.* Continuing his search, the officer found a second matchbox containing crack cocaine. *Id.* at 832-33. On appeal from Ferrell's possession conviction, this Court held that no incriminating circumstances—other than mere proximity—supported a finding of constructive possession.[4] *Id.* at 835. Ferrell "was merely seated in the car next to what by all accounts appeared to be an ordinary matchbox." *Id.*

¶17. But unlike *Ferrell*, here, Moody was not merely in proximity to drugs. Moody appeared erratic and high on narcotics. And when arrested, Moody griped about not getting rid of his drugs before officers arrived. So *Ferrell* has no application, particularly in light of Moody's comment evidencing his knowledge of the drugs.

¶18. Viewing the evidence in the light most favorable to the State, a reasonable juror could have found Moody constructively possessed the methamphetamine. Thus, sufficient

---

[4] This Court also held the officer's search constitutionally invalid. *Id.* at 833-34.

6

evidence supports his conviction.

## II.     Weight of the Evidence

¶19.    Next, Moody repackages his sufficiency challenge as an attack on the weight of the evidence supporting the jury's guilty verdict.

¶20.    "When reviewing challenges to the weight of the evidence, this Court views the evidence 'in the light most favorable to the verdict[.]'" ***Williams v. State***, 285 So. 3d 156, 160 (Miss. 2019) (alteration in original) (quoting ***Little v. State***, 233 So. 3d 288, 292 (Miss. 2017)).    "This Court will only disturb a verdict '. . . when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.'" ***Id.*** (alteration in original) (quoting ***Little***, 233 So. 3d at 292).

¶21.    But for the same reasons the evidence supported his conviction, when viewed in the light most favorable to the verdict, Moody's conviction does not sanction an unconscionable injustice.

## Conclusion

¶22.    Moody exercised dominion and control over "his" vehicle knowing there was methamphetamine in it.  And the jury's verdict did not result in an unconscionable injustice, so the verdict was not against the weight of the evidence.  We affirm Moody's conviction and sentence.

¶23.    **AFFIRMED.**

**RANDOLPH, C.J., KING AND COLEMAN, P.JJ., CHAMBERLIN, ISHEE, GRIFFIS, SULLIVAN AND BRANNING, JJ., CONCUR.**

7